IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BARRY L. MOTES, JR., :
    Plaintiff, :
 :
vs. :
 :
 : CIVIL ACTION NO. 19-0037-JB-N
SAM COCHRAN, *et. al*, :
    Defendants. :
 :

**Report and Recommendation**

Plaintiff Barry L. Motes, Jr., an Alabama prisoner proceeding *pro se* and *in forma pauperis*, has brought this civil action pursuant to 28 U.S.C. § 1983. (Doc. 1). Plaintiff Motes is suing Sheriff Sam Cochran, Warden Trey Oliver, III, Correctional Officer Ferman Jackson, and Correctional Officer Lester Pittman for failing to protect him from an inmate attack on November 25, 2018, while he was held as a pretrial detainee in Mobile County, Alabama Metro Jail. After careful review, it is recommended that Defendants' Motion for Summary Judgment be **GRANTED,** and Plaintiff's complaint be **DISMISSED** in its entirety.

**I.    Background and Summary of Allegations.**[1]

In his complaint, Motes alleges that he was attacked by Inmate Moore. According to Motes, Inmate Moore was placed in segregation cell 1137, along with Motes and another inmate. Motes alleges that as Inmate Moore was being placed in the cell he told Officer Jackson, "if you put me in the cell with those white boys I'm going to try to kill them!". (Doc. 1 at 4). Motes further alleges he informed Officers Jackson and Pittman "that he feared for his life and needed to be moved." (*Id*.). However, Motes affirms the Defendants took no action, causing Motes to be beaten

---

[1]    The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." *Priester v. City of Riveria Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000).

1

to the point of requiring medical treatment in a local emergency room. (*Id.*). Motes requests monetary damages in the amount of $500,000 and a trial by jury. (*Id.* at 8).

The Defendants have answered the suit (denying each allegation asserted against them) and have filed special reports in support of their position. (Docs. 13, 14, 28, 29). Defendants' special reports include the sworn affidavits of Officers Jackson and Pittman, in which they aver never hearing threats of violence or being informed of or aware of a problem. (*See* Docs. 13-1, 13-2). Specifically, Officer Jackson declares that before he placed Inmate Moore in segregation cell 1137, Inmate Moore stated that he did not want to be put into a cell with anyone else. (Doc. 13-1 at 1). However, Inmate Moore was placed the cell with Motes and another inmate, and Officer Jackson left the segregation unit. (Doc. 13-1 at 1-2). Officer Jackson avers that soon afterwards, he heard noise coming from the segregation cell area and returned to investigate, observing Inmate Moore lying down in the back of the cell and Motes (and the other inmate) at the door "making noise through the food slot." (*Id.* at 2). Officer Jackson again left the segregation area, only to return once again after hearing noise or commotion. This time he observed violent behavior ("someone's head being pushed toward the food slot") and he called for assistance. (*Id.*). Per Metro Jail policy, Officer Jackson waited for backup to arrive and then entered the cell, witnessing Inmate Moore striking Motes. The area was secured, and Motes was taken to the medical clinic. Officer Jackson avers that he did not hear any threats of violence or any warning of any problem from Motes or anyone. (*Id.*).

In between Officer Jackson's two returns to the segregation unit, Officer Pittman was asked by a supervisor to investigate the commotion at or near cell 1137. (Doc. 30 at 2). Upon arriving, he noticed several inmates in a segregation cell and heard one or two of the inmates saying "they wanted out of the cell because of another guy." (Doc. 13-2 at 1). Officer Pittman avers he "didn't

hear any specific threats or witness any violence, and left after a minute or two." (*Id*.). Officer Pittman further avers he "neither heard nor witnessed the physical altercation or confrontation" involving Motes on November 25, 2018. (*Id*. at 2). Defendants further affirm that the incident complained of in this action were reviewed by supervisory personnel after multiple grievances were filed by Motes, and no wrongdoing was found on the part of either Officer Jackson or Pittman. (Doc. 30 at 3).

The Court converted Defendants' answers and special reports into a motion for summary judgment on February 24, 2021, and Motes was ordered to give notice of intent to proceed by March 16, 2021 and ordered to file a response to the motion by April 12, 2021. (*See* Doc. 32). Motes did neither. On April 29, 2021, the Court entered a report and recommendation to dismiss for failure to prosecute and obey the Court's order. However, shortly after the report and recommendation was docketed, the Court received a letter from Motes (dated April 29, 2021), which the Court construed as a notice of intent to proceed, and withdrew the report and recommendation to dismiss and gave Motes until June 25, 2021 to respond to the motion for summary judgment. (*See* Doc. 35). To date, however, Motes has failed to respond or communicate with the Court in any way.

Review of the record reveals Motes has been provided ample opportunity to litigate his claim and this motion for summary judgment is ripe for consideration.

**II.    Summary Judgement Standard.**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.") (emphasis in original); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'") (emphasis in original) (citation omitted).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing or pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor.

*ThyssenKrupp Steel USA, LLC v. United Forming, Inc*., 926 F. Supp. 2d 1286, 1290 (S.D. Ala. 2013) (internal citations omitted).

The requirement to view the facts in favor of the nonmoving party extends only to "genuine" disputes over material facts. *Garczynski*, 573 F.3d at 1165. "A genuine dispute requires more than 'some metaphysical doubt as to material facts.'" Id. (citations omitted). A "mere

4

scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment. *Id*. In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007); *see also Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. 2011) ("In cases where opposing parties tell different versions of the same events, one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations.").

### III. Discussion.

#### a. Eleventh Amendment Immunity.

To the extent Plaintiff attempts to sue Defendants in their official capacities (as state correctional officers) and seeks any type of monetary award, the defendants are entitled to absolute immunity from suit, as official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985).

> A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities.

5

*Id*., quoting in large measure *Lancaster v. Monroe Cnty*, 116 F.3d 1419, 1429 (11th Cir. 1997). Accordingly, Defendants, all employed by the State of Alabama, are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429.

### b. Qualified Immunity.

Defendants contend that they are entitled to qualified immunity because Plaintiff cannot show a deliberate indifference claim under the Eighth Amendment. (Doc. 29). "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Marbury v. Warden,* 936 F3d 1227, 1232 (11th Cir. 2019) (citation omitted). Since there is no dispute that the defendants in this action were acting within their discretionary authority at all times when the acts in question occurred, the burden shifts to Plaintiff to show that Defendants violated a constitutional right and that the right was clearly established at the time of the alleged violation. *Id*. Therefore, the Court will now address whether this action identifies any constitutional violation.

### c. Failure to Protect Claim.

Prison officials have a duty to "ensure reasonable safety" of inmates, "a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844-845 (1994). However, "a prison custodian is not the guarantor of a prisoner's safety", *Purcell ex rel. Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1321 (11th Cir. 2005) (citation omitted), and "[i]t is not[] every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. Prison officials must "take

reasonable measures to guarantee the safety of the inmates", *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 3200, 82 L. Ed. 2d 393 (1984), but there is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not. . . ." *Farmer*, 511 U.S. at 838. It is a defendant's deliberate indifference to a known, significant risk that violates the Eighth Amendment.[2] *Lane v. Philbin*, 835 F. 3d 1302 (11th Cir. 2016).

To establish a § 1983 claim for deliberate indifference, Plaintiff must show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Id.* at 1307. The first, objective, element requires the plaintiff to show "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety." *Id*. The second, subjective, element requires showing that the official was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . also draw the inference." *Farmer*, 511 U.S. at 837. Again, it is not enough that an inmate proves that the defendant should have known of the risk, but did not, as actual knowledge is the key. *See, e.g., Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996). "It is obduracy and wantonness,

---

[2] Motes' failure to protect claim, as a pretrial detainee, is due to be analyzed under the Due Process Clause of the Fourteenth Amendment, which prohibits the imposition of punishment on those who have not yet been convicted of a crime, rather than the Eighth Amendment, which prohibits cruel and unusual punishment governs convicted inmates. *See Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996); *see also Smith v. Terry*, 2:13-cv-216, 2016 WL 4942066, *2 (M.D. Ala. Aug. 15, 2016). "However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." *Caldwell,* 85 F.3d at 1490. *But cf., Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 192 L.Ed.2d 416 (2015) (holding "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one").
  Notably, the Eleventh Circuit, along with the Fifth and Eighth Circuits have limited *Kingsley* to excessive force claims only, continuing to rely on the subjective deliberate indifference standard for inadequate medical treatment, conditions of confinement, failure to protect, etc. *See Dang ex rel. Dang v. Sheriff Seminole Cty*., 871 F.3d 1272, 1279 n.2 (11th Cir. 2017) (reasoning that "*Kingsley* involved an excessive force claim" and thus did "not actually abrogate or directly conflict with [Eleventh Circuit] prior precedent").

not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed 2d 251 (1986). "The known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted). Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id.*

Taking Motes' allegations as true for the purposes of this motion, the record reflects that while there may have been a general risk of harm posed to Motes, Officers Jackson and Pittman were not aware of a specific, substantial risk of serious harm. Without facts showing that Inmate Moore was known to be violent, had been involved in previous assault incidents or inmate attacks, that Motes and Inmate Moore had history with each other or were in rival gangs, etc., Motes has failed to show that Defendants had subjective knowledge that Motes faced a substantially serious risk of harm. Moreover, the record fails to support that Motes informed any defendant about the nature of a specific threat Moore personally made against him – instead, he stated that he feared for his life and needed to move cells. A reasonable jury could not find this statement sufficient, without further details, to make the defendants aware of substantial risk of harm. *See e.g., Chatham v. Adcock*, 334 F. App'x 281, 293-94 (11th Cir. 2009) (where no "specific serious threat" from inmate assailant was reported to jail official prior to attack, summary judgment in favor of defendants was appropriate); *McBride v. Rivers*, 170 F. App'x 648, 655 (11th Cir. 2006) (vague allegations of "problems" with another inmate are insufficient to establish that defendant officers were aware of a specific risk of serious harm); *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) ("[T]he allegations of [plaintiff's] complaint do not show the requisite subjective knowledge

of a risk of serious harm, and, thus, do not state a claim for deliberate indifference resulting from a failure to protect from the attack by [a fellow inmate]."); *Woodyard v. Ala. Dep't of Corr.*, 700 F. App'x 927, 933 (11th Cir. 2017) (threat to stab was insufficient where the two inmates had no history of altercations and no reports of widespread violence), *but cf., Rodriguez v. Sec'y for the Dep't of Corr.*, 508 F.3d 611 (11th Cir. 2007) (allegation that inmate informed several guards that he had been threatened by his former gang and that he feared they would kill him when he was released into the general population was sufficient to overcome summary judgment because a reasonable jury could find that the defendant officers were aware that the plaintiff inmate faced a substantial risk of serious harm from his former gang members after renouncing his membership).

Here, without knowledge of details of a threat to enable the Defendants to conclude that a 'strong likelihood' of injury exists, not a 'mere possibility' of harm, e.g*., Brooks v. Powell*, 800 F.3d 1295, 1301 (11th Cir. 2015)), the defendants cannot be held liable for failing to protect Motes from the November 25, 2018 inmate attack. This stringent standard was reexamined and upheld by the Eleventh Circuit in *Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019) (discussing "[t]he unfortunate reality [ ] that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm.") (internal quotation and citation omitted).

In *Marbury*, the Court confirmed the necessity of showing knowledge of a specific threat of harm, rather "than a generalized awareness of risk", to make out a deliberate indifference claim. The Court concluded defendant officers were not deliberately indifferent to the plaintiff's safety, despite that the plaintiff repeatedly asked to be transferred to the segregation unit because he was concerned about a general lack of safety in his cellblock (where he witnessed 15 inmate-on-inmate stabbings in approximately 6 months). Additionally, the plaintiff's statement that a friend told him

9

an unnamed inmate intended to hurt him was insufficient to put the defendants on notice of a specific and substantial risk of serious harm, and the warden's alleged callous jokes telling the prisoner to get a knife did not show she was aware of a substantial risk of serious harm.

Following Circuit precedent, the Court concludes that Motes' allegations are lacking specific threats sufficient to show that the defendants were aware that he faced a substantial risk of serious harm, rather than a general risk, from Inmate Moore. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) ("Only '[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment.' *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).'"). "Successful deliberate-indifference claims will generally require some further reason – beyond the plaintiff having informed the defendant officers of the threat – that a prison official could have concluded that a particular threat evidenced a substantial threat, rather than the mere possibility, of serious harm." *Marbury*, 936 F.3d at 1236 (specifying "that subjective awareness of only some risk of harm to a prisoner is insufficient for a deliberate-indifference claim"). Accordingly, Plaintiff has not shown that Defendants Jackson and Pittman were put on notice that Motes faced the type of substantial risk of serious harm necessary to establish deliberate indifference, and Defendants Jackson and Pittman are entitled to qualified immunity.

Similarly, Sheriff Cochran and Warden Oliver are also entitled to qualified immunity, as the record lacks any evidence of a casual connection between the actions of Defendants Cochran and Oliver and Inmate Moore's attack on Motes.

Motes alleges that Defendants Cochran and Oliver are liable for inadequate security and safety of inmates. Such a claim is based entirely on their roles as supervisors, and "[i]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the

unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted). If a supervisor's liability cannot be established based on the supervisor's personal participation in the complained acts, a plaintiff must show a causal connection between the supervisor's actions and the alleged constitutional deprivation. *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).

> A causal connection may be established when: 1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Valdes v. Crosby*, 450 F.3d 1231, 1237 (11th Cir. 2006) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)). A custom is established by showing "a longstanding and widespread practice [such that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (A custom requires showing a practice so settled and permanent that it takes on the force of law). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *West v. Tillman*, 496 F.3d 1321, 1329 (11th Cir. 2007) (quotation marks and citations omitted).

Motes has failed to allege any facts indicating that Defendants Cochran and Oliver were personally involved in the incident or showing "that serious inmate-on-inmate violence was the norm or something close to it" – evidenced by "pervasive staffing and logistical issues rendering prison officials unable to address near-constant violence, tensions between different subsets of a prison population, and unique risks posed by individual prisoners or groups of prisoners due to

11

characteristics like mental illness." *Marbury* 936 F. 3d at 1234-35 (internal citations omitted).[3]

Indeed, Motes does not provide any allegations to causally connect Defendants Cochran or Oliver to the inmate-on-inmate attack by way of a "'custom or policy' or with facts supporting an inference that the supervisor(s) directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003). Accordingly, Motes falls short of establishing a failure to protect claim as to the November 25, 2018 incident, and Defendants are entitled to qualitied immunity.

### IV.  Conclusion.

Plaintiff Motes has failed to establish a constitutional violation and Defendants are entitled to qualified immunity. Thus, summary judgment should be **GRANTED** in favor of Defendants Cochran, Oliver, Jackson, and Pittman, and Plaintiff's claims **DISMISSED** in their entirety.

---

[3]  Review of Eleventh Circuit law confirms the high hurdle of establishing that a substantial risk of serious harm exists based on the general threat posed by inmate-on-inmate violence. For instance:

In *Harrison v. Culliver*, 746 F.3d 1288 (11th Cir. 2014), the plaintiff presented evidence of 33 incidents on inmate-on-inmate violence over the span of three and a half years, four of which occurred in the same hallway where the assault of the plaintiff occurred, in a prison which housed 800-900 inmates. The Court concluded that the evidence presented was "hardly sufficient to demonstrate that [the institution] was a prison 'where violence and terror reign.'" Id. at 1300.

In *Green v. Hooks*, 2020 U.S. App. LEXIS 834 (11th Cir. Jan. 6, 2020), the record evidence that 28 reported incidents of sexual assault occurred over five years at the prison, which had a population of 1,500 inmates. While noting that sexual assault was "terrible", the Court found the numbers of incidents "did not rise to the level of demonstrating the [prison] was "a prison where violence and terror reigned." Id. at *34 (internal citation omitted).

In *Marbury v. Warden*, 936 F.3d 1227 (11th Cir. 2019), the plaintiff affirmed he personally witnessed 15 inmate stabbings prior to the incident in which he was stabbed, he wrote letters to the warden asking to be moved to another dorm (he described his dorm as an "over-rated gang affiliated block"). *Id*. at 1231. The Court found the evidence insufficient to sustain an Eighth Amendment claim and clarified that precedent requires a plaintiff who alleges a generalized risk of harm to "point[] to specific features of a facility or its population rendering it particularly violent." *Id*. at 1235.

12

The instructions that follow contain important information regarding objections to the report and recommendation of the Magistrate Judge.

## Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the _22nd_ day of  July 2021.

Katherine P. Nelson<br>
**UNITED STATES MAGISTRATE JUDGE**